# In the United States Court of Federal Claims

No. 25-312
Filed: March 31, 2025
Published: April 15, 2025[†]

| |
|---|
| **HYDRAULICS INTERNATIONAL, INC.,** |
| *Plaintiff,* |
| **v.** |
| **THE UNITED STATES,** |
| *Defendant,* |
| **and** |
| **SUN TEST SYSTEMS, INC.,** |
| *Defendant-Intervenor.* |

*Howard W. Roth*, with *Jacob W. Scott* and *Mark Emilio S. Abrajano*, Smith Currie Oles LLP, Seattle, WA, for Plaintiff, Hydraulics International, Inc.

*Kara M. Westercamp*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, *Douglas K. Mickle*, Acting Deputy Director, *Patricia M. McCarthy*, Director, and *Yaakov M. Roth*, Acting Assistant Attorney General, U.S. Department of Justice, Washington, D.C. with *Joseph Van Dusen*, Major, Contract Litigation and Intellectual Property Division, U.S. Army, Of Counsel for Defendant, the United States of America.

*David S. Cohen*, Cordatis LLP, Arlington, VA with *John J. O'Brien*, Of Counsel for Defendant-Intervenor, Sun Test Systems, Inc.

---

[†] This Memorandum Order and Opinion was originally filed under seal on March 31, 2025, (ECF No. 46). The Court provided parties the opportunity to review this Opinion for any proprietary, confidential, or other protected information and submit proposed redactions. The parties proposed their redactions in a Joint Status Report filed on April 14, 2025, (ECF No. 56). The Court hereby adopts the parties' proposed redacts and reissues its Memorandum Opinion and Order.

## MEMORANDUM ORDER AND OPINION[1]

**TAPP, Judge.**

This pre-award bid protest concerns a U.S. Department of the Army, Army Contracting Command ("Army") proposed sole-source award to Sun Test Systems, Inc. ("Sun Test"), for 202 helicopter Aviation Ground Power Units ("AGPUs") and ancillary services, parts, training, and refurbishment. (Compl. ¶ 1, ECF No. 1). Along with its Complaint, protestor Hydraulics International, Inc. ("HII"), moved for a preliminary injunction. (*See* Mot. for Prelim. Inj., ECF No. 2). The Court determines that HII has not demonstrated a likelihood of success on the merits or irreparable harm. Its Motion is **DENIED**.

## I.    Background

These parties have been dogged adversaries. In January 2021, the United States Army issued a request for whitepapers, and subsequently, enhanced whitepapers ("EWPs") for prototypes of the AGPU 1.1 from potential contractors, including HII. (Compl. ¶¶ 1, 36; *see* Memo in Support of Mot. for Prelim. Inj. at 4, ECF No. 2-1). HII submitted an EWP, but the Army ultimately decided to award the Other Transaction Authority ("OTA") procurement to Sun Test and another offeror, John Bean Technologies ("JBT"). (Memo in Support of Mot. for Prelim. Inj. at 5; Proposed Defendant-Intervenor Sun Test Systems, Inc.'s Initial Status Conference Statement Regarding Preliminary Injunction ("Def.-Interv. Statement") at 2, ECF No. 13). HII challenged this decision at the Court of Federal Claims and lost. *See Hydraulics Int'l, Inc. v. United States*, 161 Fed. Cl. 167 (2022) ("*Hydraulics* (2022)"). Judge Holte found that the selection of the AGPU 1.1 prototypes pursuant to the OTA was neither arbitrary nor capricious, and the Army reasonably evaluated all the whitepapers and concluded that Sun Test's and JBT's whitepapers best met the combined technical and schedule requirements for the requested prototypes. (Def.'s Resp. at 2, ECF No. 12).

After *Hydraulics* (2022), Sun Test and JBT both submitted prototypes that the Army tested "extensively[,]" and in September 2023, the Army determined that Sun Test had successfully developed the AGPU prototype and met all key operational requirements. (Def.-Interv. Statement at 2). The Army stated that Sun Test "was the only source that 'provides a three-in-one unit . . . '" and that it intended to award a sole-source contract to Sun Test. (*Id.*). In October 2024, HII once again protested this decision, this time before the Government Accountability Office ("GAO"). (*See id.*). It lost again. (*See id.*).

---

[1] This Memorandum Opinion and Order follows the Court's previously filed Order, ("Order Den. Prelim. Inj.," ECF No. 31), denying Plaintiff's Motion for a Preliminary Injunction, (ECF No. 2). After the Court's Order was issued, Plaintiff filed an amended Complaint, (ECF No. 32). Because the amended Complaint was not the operative pleading prior to the Order Denying Preliminary Injunction, the Court will not now incorporate the additional arguments raised in the amended Complaint.

Subsequent to awarding the OTA, the OTA statute was amended to allow non-competitive procurements only when "essential to meet critical national security objectives." 10 U.S.C. § 4022(a)(2)(C); (Compl. ¶ 43; Memo in Support of Mot. for Prelim. Inj. at 5). HII alleges that the United States was supposed to change its procurement approach in response to this amendment—instead of freely being able to award a follow-on procurement on a noncompetitive basis, HII maintains that the Army now had to show that the procurement was "essential to meet critical national security objectives." (Memo in Support of Mot. for Prelim. Inj. at 5 (citing 10 U.S.C. § 4022(a)(2)(c))). However, the Army determined that the AGPU 1.1 was not essential to meet critical national security objectives and instead used its authority under 10 U.S.C. § 3204(a)(1) for the award. (*See* Def.-Interv. Statement at 2 n.3). Subsequently, this litigation ensued.

## II.    Analysis

Now, in its third bite of the apple, HII protests the Army's determination that Sun Test was the only responsible source for the AGPUs because HII can allegedly provide the same functionalities at a much lower price. (*See* Compl. ¶ 2). HII claims that it can produce 202 units for $██████████ (before accounting for volume discounts), which is $█████████ less than the estimated total cost of the proposed sole source contract. (*See id.* at ¶ 3). HII argues that the Army failed to conduct adequate market research, which would have revealed that HII could produce the AGPU 1.1 units or a similar compliant model. (*Id.* at ¶ 76). HII says that the Army did not directly contact potential offerors and relied on outdated literature and market research. (*See id.* at ¶ 96). HII supports these assertions in part with declarations of HII's president, Mr. Bahman Seifollahi. (*See* Compl. Ex. B, ECF No. 1-3; Pl.'s Reply Ex. 2, ECF No. 28-2).[2] To expedite a remedy, HII requests a preliminary injunction to halt contract performance. (*See* Mot. for Prelim. Inj.).

In deciding whether to grant preliminary injunctive relief, the court must consider four factors: (1) plaintiff's likelihood of success on the merits; (2) whether plaintiff will suffer irreparable harm without the injunction; (3) the balance of the harms between the parties; and (4) the public's interest in an injunction. *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018). These factors must be established "by a clear showing." *GEO Grp., Inc. v. United States*, 100 Fed. Cl. 223, 226 (2011) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (internal citation omitted)). While no single factor is dispositive, a protester must establish the first two factors before an injunction can be granted. *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 676 F. App'x 980, 984 (Fed. Cir. 2017); *see also Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)). Although a strong showing of one factor may overcome weakness as to others, "the absence of an adequate showing," with regard to "any one factor may be sufficient" to demand denial of injunctive relief. *FMC Corp. v.*

---

[2] HII also argues that the Army overlooked the fact that Sun Test cannot meet the requirement of simultaneous and continuous operation required under Condition B of the Product Item Description's paragraph 3.7. (Compl. ¶ 11). At this early stage in the proceedings, the Court is unable to verify this claim.

*United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Because protesters frequently seek injunctive relief prior to the filing of the administrative record, the Court's consideration of relative factors is sometimes hampered by the paucity of available facts.

### A. Likelihood of Success on the Merits

To succeed on the merits of this action, HII must demonstrate that the Army's decision was "arbitrary capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also* 28 U.S.C. § 1491(b)(4). This burden is met by proving that the procurement official's decision (1) lacked a rational basis, or (2) the procurement procedure involved a violation of regulation or procedure. *See Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (Fed Cir. 2015).

HII argues that the Army overlooked its ability to produce compliant AGPU 1.1 systems and therefore violated the Competition in Contracting Act ("CICA"), the Federal Acquisition Regulation ("FAR"), and the terms of its own proposed sole source statement of work. (Memo in Support of Mot. for Prelim. Inj. at 10). HII alleges that when the Army first issued its OTA for the AGPU prototypes, 10 U.S.C. § 4022 permitted the Army to award follow-on contracts on a noncompetitive basis. (*See id.*) But after the OTA award, the statutory framework changed; HII says this requires some justification for noncompetitive follow-on contracts, a requirement the Army failed to meet. (*See id.* at 10–11). HII cites the provision of the FAR, stating:

> (B) in the case of a follow-on contract for the continued development or production of a major system or highly specialized equipment, or the continued provision of highly specialized services, such property or services may be deemed to be available only from the original source and may be procured through procedures other than competitive procedures when it is likely that award to a source other than the original source would result in—
>
> (i) substantial duplication of cost to the United States which is not expected to be recovered through competition; or
>
> (ii) unacceptable delays in fulfilling the agency's needs.

(Memo in Support of Mot. for Prelim. Inj. at 11 (citing 10 U.S.C. § 3204(b)(A)–(B) (promulgated through FAR 6.302-1(a)(2)(ii))). HII argues that the Army never relied on this provision, and there is no evidence of substantial duplication of costs to the Army that is not expected to be recovered through competition. (*See id.*). Alternatively, HII contends that even if the Army's duplication cost estimates were accurate, the potential cost savings would be "more than sufficient to permit the Army to recover its duplication costs through competition." (*Id.* at 12).

The Army refutes HII's argument, stating that this change in law is "unrelated" to the issues here. (*See* Def.'s Resp. at 3). The Army claims that the procurement process here complied with CICA because the Army first utilized OTA and determined that Sun Test's prototype was the "'only vendor that demonstrated an AGPU product that could meet all the

4

Army's requirements.'" (*Id.* at 7 (quoting Appx9)).[3] The Army said that selecting another source would "result in substantial duplication of cost" and "additional market research performed in 'April 2024 did not identify any new or additional ground power vendors or capabilities.'" (*Id.* at 7–8 (quoting Appx11)). The Army cites their Justification and Approval ("J&A") document, detailing the extensive procurement process for this award. (*See id.* (citing Appx5–20)). The J&A cites 10 U.S.C. § 3204(a)(1) and FAR 6.302-1(a)(2)(ii)(AA) as the authority for this procurement. (*Id.* at 7 (citing Appx9)). 10 U.S.C. § 3204(a)(1) states that:

> (a) The head of an agency may use procedures other than competitive procedures only when—
>
> (1) the property or services needed by the agency are available from only one responsible source or only from a limited number of responsible sources and no other type of property or services will satisfy the needs of the agency . . . .

10 U.S.C. § 3204(b)(B), as stated above, clarifies the application of § 3204(a)(1). The Army's J&A document states that there is "[o]nly [o]ne [r]esponsible [s]ource and [n]o [o]ther [s]upplies or [s]ervices will [s]atisfy [a]gency [r]equirements" and "[s]ubstantial duplication of cost to the [Army] . . . is not expected to be recovered through competition." (*Id.* at Appx9).

HII argues that *it* is another responsible source and can satisfy agency requirements, which would have been clear to the Army had it conducted adequate market research. (*See* Pl.'s Reply at 3). The Army conducted market research in April 2024, prior to indicating their intent to give Sun Test the sole-source award at issue. (Hr'g Tr. 37:11–13, 51:14–52:7, ECF No. 34; Def.'s Resp. at 8, Appx11 ("Market research conducted in April 2024 did not identify any new or additional ground power vendors or capabilities."), Appx14). The Army did not speak to HII as part of the April 2024 market research, (Hr'g Tr. 37:14–16), but it did speak with Sun Test and JBT, (*id.* 37:23–38:2). The Army also "contacted knowledgeable people[,]" looked at "documents," "Government databases," and "attended trade shows, conferences, and symposia" as part of their April 2024 market research. (*Id.* 37:1–49:3; Def.'s Resp. at 8, Appx14–16). While the Court does not police the best practices of agencies, these terms used by the Army are so vague that they lack any real meaning. Pointing to these ambiguous sources as proof of sufficient market research is stretching agency discretion to its outer limit.

Even so, the Army argues that the sufficiency of the market research is a nonissue because HII was and is not capable of "develop[ing] an AGPU 1.1 used to serve helicopters that would meet the Army's vital requirements" and that HII has not been "forthright" with its production abilities. (Def.'s Resp. at 2 (citing Pl.'s Ex. B), 7). The Court also finds itself unable to pin down HII's actual production capabilities. When asked point-blank whether HII was

---

[3] The United States attached three exhibits to its Response as one Appendix with continuous pagination. Page one of the Appendix is labeled as "Appx1" page two is labeled as "Appx2" and so on, up until the end of the third document at "Appx27". For ease of reference, the Court will adopt the United States' pagination method and refer to the documents as they are labeled in the Response.

presently able to produce a fully-compliant AGPU 1.1 system, HII responded in the affirmative. (Hr'g Tr. 60:22–25 (The Court: "As we sit here today, can Hydraulics provide a fully . . . compliant auxiliary power unit as specified in . . . this procurement?" Pl.'s Counsel: "The answer to that is yes . . . .")). HII used declarations by HII President Mr. Bahman Seifollahi to support this assertion. (*See id.* 63:4–12; Compl. Ex. B, ("Seifollahi Decl. 1"), ECF No. 1-3; Pl.'s Reply Ex. 2, ("Seifollahi Decl. 2"), ECF No. 28-2). Mr. Seifollahi stated, "HII can meet the same functionalities as the Sun Test AGPU 1.1 . . . ." (Seifollahi Decl. 1 at ¶ 13).

However, HII's claim is founded in its assertion that Sun Test's AGPU 1.1 is noncompliant with the Army's requirement of simultaneous and continuous operation of the AC, hydraulic, and pneumatic functionalities. (*See* Seifollahi Decl. 1 at ¶ 13). HII alleges that Sun Test has not shown that its AGPU 1.1 units can function simultaneously and continuously under a three-in-one condition, which is the criteria the Army used to exclude HII from the OTA. (Memo in Support of Mot. for Prelim. Inj. at 13). Thus, when HII states that they can meet the same functionalities as the Sun Test AGPU 1.1, this does not mean that HII can produce an AGPU 1.1 compliant with the Army's standards, but rather an AGPU 1.1 unit on par with the supposedly lax requirements applied to Sun Test. This is confirmed by Mr. Seifollahi's second declaration, stating that HII would be able to modify their AGPU 1.1 systems to meet the "simultaneous and continuous operation" standard in six (6) months. (Seifollahi Decl. 2 at ¶ 3). This leads the Court to believe that HII does *not* have a compliant AGPU 1.1 unit yet but *may* later this year. Regardless, the Court will not adopt HII's assertion that Sun Test's AGPU systems are not compliant. Without the benefit of the full administrative record, these assertions are no more than a hypothetical merry-go-round. Either way, HII has not met its burden. HII has not yet shown that it is capable of being considered "another responsible source" for AGPU 1.1 systems under 10 U.S.C. §§ 3204(a), (b)(A)–(B). HII continues to argue that its systems are compliant, despite the Army clearly stating otherwise: "[HII] did not meet a critical key performance parameter that requires the unit to be capable of providing independent and simultaneous operation without major modifications requiring a 12-month extension and could not meet the [Army's] set schedule." (Def.'s Resp. at Appx17).

The Court is also not persuaded by HII's alternative argument, that whether HII was able to produce fully-compliant AGPU 1.1 units at the time the Army was undertaking its market research is irrelevant, because the J&A document "requires the agency to look at products that can be modified in their market research . . . and they didn't do that." (Hr'g Tr., Pl.'s Counsel, 63:17–23; Def.'s Resp. at Appx8). Ultimately, HII has not provided the Court with sufficient proof of their production capabilities. Mr. Seifollahi's somewhat inconsistent declarations and HII's assertions made in the Complaint and during the March 11, 2025 hearing were unsubstantiated. HII has not shown that it is likely to succeed on the merits.

### B. Irreparable Harm

HII argues that it will suffer irreparable harm if the Court denies its Motion because it will be denied any adequate remedy for the Army's illegal proposed sole source award. (*See* Memo in Support of Mot. for Prelim. Inj. at 14). As described above, HII has not clearly demonstrated that it is or was capable of producing a compliant AGPU 1.1 system. It would certainly be a bridge too far for the Court to then assume that a noncompetitive protestor would suffer irreparable harm.

When evaluating whether a protestor will suffer irreparable harm, the Court must determine "whether [the] plaintiff has an adequate remedy in the absence of an injunction." *Hanford Tank Disposition All., LLC v. United States*, 173 Fed. Cl. 269, 340 (2024) (quoting *Insight Sys. Corp. v. United States*, 110 Fed. Cl. 564, 582 (2013) (internal citation omitted)). Additionally, the protestor must demonstrate a financial injury that is "both certain and great" and will have "an immediate and substantial impact." *ACI Techs., Inc. v. United States*, 162 Fed. Cl. 39, 48 (2022) (citing *Wis. Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) and *Sys. Appl'n & Techs., Inc. v. United States*, 691 F.3d 1374, 1385 (Fed. Cir. 2012)). The Court will "consider economic loss as evidence of irreparable harm if it 'threatens the survival of a movant's business'" but "the movant must provide facts or evidence to support its assertions of harm and cannot rely only 'on attorney arguments to establish irreparable injury.'" *Newimar, S.A. v. United States*, 163 Fed. Cl. 240, 254 (2022) (internal citations omitted).

Here, HII argues that not receiving this award might put the company out of business. (Hr'g Tr. 8:20–23 (Pl.'s Counsel: "[N]ot getting this AGPU 1.1 . . . could put [HII] out of business. I mean, they've been chasing this for years and invested a lot of money.")). HII also cites to one of Mr. Seifollahi's declarations stating that an award to Sun Test is an "egregious misuse of taxpayer dollars and disregards a more capable, cost-effective American alternative. A Dutch company owns the proposed sole source awardee." (Seifollahi Decl. 1 at ¶ 3; Memo in Support of Mot. for Prelim. Inj. at 14). HII submits various other contentions, including that HII is an American small business, HII was found to be a qualified "compliant" producer of AGPU systems by the Army, and that continuing with the improper sole source award would cause HII's "500 American workers and subcontractors" irreparable harm. (Seifollahi Decl. 1 at ¶¶ 3–11; Memo in Support of Mot. for Prelim. Inj. at 14–15). Ultimately, HII has not adequately supported its claim. The Court finds Mr. Seifollahi's statements largely irrelevant and agrees with the Army that HII cannot establish irreparable harm because it has not demonstrated that it can build compliant AGPU 1.1 systems. (*See* Def.'s Resp. at 8–9). Therefore, the Court cannot readily find that HII will suffer a "certain and great" financial injury that will have "immediate and substantial impact." *See ACI Techs.*, 162 Fed. Cl. at 48. While the Court is sympathetic to the negative impacts this preliminary injunction denial may cause HII's "500 American workers and subcontractors," it cannot conclude that the harm will be irreparable. (*See* Seifollahi Decl. 1 at ¶¶ 3–11). Moreover, bold assertions like those made by HII are better addressed to the political branches rather than the judiciary, whose limited review does not include implementing its own policy preferences.[4]

---

[4] Also irrelevant is the United States' argument that a lesser sole source award to Sun Test would reduce the harm to HII. In its briefing, the United States mentions that the Army is considering awarding Sun Test an initial award of only 20 out of the 202 AGPU 1.1 systems. (Def.'s Resp. at 1 n.1). The United States argues that HII will not suffer "immediate harm" because this reduced-quantity contract will take Sun Test thirteen months to fill and is for a mere $20,000,000 instead of the full award amount. This entirely hypothetical contract is not before the Court.

C.  *Balance of Hardships and Public Interest*

The Federal Circuit has held that a plaintiff cannot be granted a preliminary injunction "unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc.*, 239 F.3d at 1350 (emphasis in original). Here, HII has not shown that it is likely to succeed on the merits, nor has it demonstrated irreparable harm. Thus, HII has not shouldered its burden necessary for the Court to grant a preliminary injunction. Even so, the Court will briefly address the remaining two factors.

As for the balance of hardships, HII states that "the hardship to Hydraulics if the Army is allowed to proceed is great, whereas the hardship to the Army in pausing the proposed sole source award is small." (Memo in Support of Mot. for Prelim. Inj. at 16). While straightforward, HII does not provide much more by way of support for its position. HII alleges that the preliminary injunction will leave HII without an adequate remedy and that the only potential harm to the Army is a delay in proceeding with the sole source award to Sun Test. (*Id.*). The Court disagrees. The Army convincingly argues that further delay in making this award will be extremely detrimental to its global operations. (*See* Def.'s Resp. at 9). For example, the current AGPU 1.0 systems are increasingly at risk of malfunction and "can no longer fully support two of the Army's three primary rotary wing airframes . . . ." (*Id.*). Ultimately, HII has not established a "clear showing" at this juncture that the balance of hardships tips in its favor. *See GEO Grp., Inc.*, 100 Fed. Cl. at 226.

Finally, HII argues that an injunction would be in the public interest. (Memo in Support of Mot. for Prelim. Inj. at 16–17). The Court agrees with HII's general assertion that the public has an interest in "ensuring that contracting agencies follow applicable procurement statutes and regulations." (*Id.* (quoting *Sheridan Corp. v. United States*, 94 Fed. Cl. 663, 669 (2010)). However, HII does not specifically address how granting this preliminary injunction would meet that end. HII argues in part that denying this preliminary injunction "would set the precedent that the Army [ ] does not need to follow CICA and FAR competitive procedures that could save the Army millions and millions of dollars . . . ." (Memo in Support of Mot. for Prelim. Inj. at 17). The Court disagrees. Facts matter. And while conjecture and argument may hint at things to come, courts must decide controversies only on the available facts. HII has not successfully shown that the Army violated CICA or the FAR, and the Court will not entertain the idea that the public's general "interest in the Army following its laws" means HII should succeed in a preliminary injunction.

###  III.    Conclusion

HII has not successfully demonstrated the elements necessary for the Court to grant its Motion. Considering the record as it stood at the time of the preliminary injunction review, HII did not have a likelihood of success on the merits. Nor did HII establish that it would suffer irreparable harm without a preliminary injunction—without the capacity to produce compliant AGPU 1.1 systems, HII seems relatively unaffected. Finally, neither the balance of hardships nor the public interest tips in favor of HII.

Therefore, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction, (ECF No. 2). The Court **ORDERS** the parties to meet and confer and file a Joint Status Report proposing redactions to this Order and Opinion **fourteen (14) days** after the entry of this Order.

**IT IS SO ORDERED.**



s/    David A. Tapp
DAVID A. TAPP, Judge

9