# In the United States Court of Federal Claims

No. 25-312
Filed: October 3, 2025
Reissued: November 20, 2025†

---

**HYDRAULICS INTERNATIONAL, INC.,**

    *Plaintiff*,

v.

**THE UNITED STATES,**

    *Defendant,*

and

**SUN TEST SYSTEMS, INC.,**

    *Defendant-Intervenor.*

---

*Howard William Roth, III*, Smith Currie Oles LLP, Seattle, WA, for Plaintiff.

*Kara Westercamp* and *Reta Emma Bezak*,[1] Senior Trial Counsel, Commercial Litigation Branch, Civil Division, with *Douglas K. Mickle*, Acting Deputy Director, *Patricia M. McCarthy*, Director, and *Yaakov M. Roth*, Acting Assistant Attorney General, U.S. Department of Justice, Washington DC, with *Major Joseph Van Dusen*, U.S. Army, Of Counsel, for Defendant.

*David S. Cohen*, with *John J. O'Brien*, Cordatis LLP, Arlington, VA, for Defendant-Intervenor.

## MEMORANDUM OPINION AND ORDER

Standing is key to establishing jurisdiction. In this pre-award bid protest, Plaintiff, Hydraulics International, Inc. ("HII"), challenges a U.S. Department of the Army Contracting Command ("Army") proposed sole-source award to Sun Test Systems, Inc. ("Sun Test"), for 202 helicopter Aviation Ground Power Units ("AGPUs") and ancillary services, parts, training, and refurbishment. (Compl. ¶ 1, ECF No. 1). The facts and procedural history have largely been

---

† This Opinion was originally issued under seal, (ECF No. 84). The Court provided parties with the opportunity to submit proposed redactions. In a Joint Status Report filed on November 20, 2025, (ECF No. 86), the parties indicated that no redactions were required.

[1] Reta Emma Bezak entered her appearance after briefing completed but conducted oral argument for the United States. (ECF No. 77).

summarized in this Court's Order denying HII's preliminary injunction and in an earlier related matter adjudicated by another judge of this Court. *Hydraulics Int'l, Inc. v. United States*, 176 Fed. Cl. 191, 194–95 (2025) (Tapp, J.); *Hydraulics Int'l, Inc. v. United States*, 161 Fed. Cl. 167, 171–74 (2022) (Holte, J.). Based on the parties' extensive briefing, (ECF Nos. 47, 60, 61, 65, 68), and an oral argument held before the undersigned, (*see* Oral Argument Transcript ("OA Tr."), ECF No. 83), the Court finds that because HII could not produce a compliant AGPU at the time the sole source decision was made, it also cannot establish standing. Therefore, the United States' Motion to Dismiss, (Def.'s Cross-MJAR, ECF No. 61), is **GRANTED** and HII's claim is **DISMISSED** for lack of subject-matter jurisdiction. RCFC 12(b)(1). Accordingly, HII's Motion for Judgment on the Administrative Record, (Pl.'s MJAR, ECF No. 47), and Sun Test's Cross-Motion for Judgment on the Administrative Record, (Def.-Interv.'s Cross-MJAR, ECF No. 60), are **DENIED** as **MOOT**.

For jurisdictional purposes of RCFC 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citation omitted). "[P]laintiff[s] bear[] the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citation omitted). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

To retain jurisdiction, federal courts are confined to resolve "cases" and "controversies" which require a plaintiff to demonstrate standing. U.S. CONST. art. III, § 2; *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008); *see also Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019) ("For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue."). A plaintiff bears the burden to prove all elements of standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To do so, a plaintiff must allege facts showing that it: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560–61). "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341. Crucial to this bid protest, the plaintiff must establish "standing as of the time [it] brought th[e] lawsuit and maintain[] it thereafter." *Carney v. Adams*, 592 U.S. 53, 59 (2020). The timing of the standing determination is key to the Court's decision here.

When the Court hears a bid protest, it "appl[ies] the appropriate [Administrative Procedure Act ("APA")] standard of review" as delineated in 5 U.S.C. § 706. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). "The APA provides standing almost to the limits of Article III, as follows: '[a] person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.'" *Aero Spray, Inc.*

2

*v. United States*, 156 Fed. Cl. 548, 558 (2021) (quoting 5 U.S.C. § 702). However, the standing inquiry in bid protests is complicated by the Tucker Act, 28 U.S.C. § 1491(b) (1994), as amended by the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104-320, 110 Stat. 3870, defining "not only this Court's jurisdiction over what actions may be brought against the government, but also who has standing to pursue them." *Aero Spray*, 156 Fed. Cl. at 559 (emphasis omitted).

Importantly, under 28 U.S.C. § 1491(b)(1), a protestor must "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). The second prong queries whether a protestor had a "substantial chance" to receive the contract award but for the "alleged" procurement process error. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citation omitted). The question is whether, "if successful on the merits of the bid protest[,]" the protestor would have had a substantial chance of securing the contract. *Id.* "However, there are exceptions" in pre-award protests. *Yang Enters., Inc. v. United States*, 156 Fed. Cl. 435, 444–45 (2021). The Federal Circuit recognizes that when a prospective bidder challenges a solicitation before the agency makes an award, there is often "no factual foundation for a 'but for' prejudice analysis." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361 (Fed. Cir. 2009). When that is the case—as it commonly is in pre-award protests—the Court must consider whether the protestor can demonstrate a "non-trivial competitive injury which can be addressed by judicial relief." *Id.* (citing *WinStar Communications, Inc. v. United States*, 41 Fed. Cl. 763 (1998)); *see Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012). Alternatively, when an "adequate factual predicate" exists such that the Court can determine whether the protestor had a "substantial chance" to receive the award, the general rule applies. *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1349 (Fed. Cir. 2013); *see also Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1291 n.3 (Fed. Cir. 2020).

The Court has long been wary of HII's standing. *See Hydraulics Int'l*, 176 Fed. Cl. at 197 ("The Court also finds itself unable to pin down HII's actual production capabilities."). Even before the United States' Motion to Dismiss, the Court found that HII had not definitively proven its standing and "ha[d] not yet shown that it is capable of being considered 'another responsible source' for AGPU 1.1 systems under 10 U.S.C. §§ 3204(a), (b)(A)–(B)." *Id.* Now, with the benefit of the full Administrative Record ("AR"), the Court finds that HII cannot meet its burden.

The United States and Sun Test contend that HII has no standing in this matter because HII could not timely produce a compliant AGPU 1.1 and therefore cannot demonstrate the requisite economic interest. (Def.'s Cross-MJAR at 15–17; Def.-Interv.'s Cross-MJAR at 16–19). The Court agrees. HII needed to demonstrate that it would incur a "non-trivial competitive injury which c[ould] be addressed by judicial relief." *Wks. Marine*, 575 F.3d at 1362. HII itself has stated that it would not have an AGPU 1.1 with "a simultaneous and continuous operating system" before September 2025. (OA Tr., 6:24–7:1). HII argues that there is a substantial chance that it would be the "lowest responsive and responsible bidder" but for the Army's meager market research conducted prior to awarding this sole source contract to Sun Test. (*See* Pl.'s MJAR at 22). The Court cannot reconcile these assertions. If HII was not able to produce a compliant AGPU 1.1 in October 2024, the date the Army published its intent to award the sole-source contract to Sun Test, (*see* AR 15482–87, ECF No. 39), how could it possibly suffer a

competitive injury—let alone have a "substantial chance" to receive the award? *See Wks. Marine,* 575 F.3d at 1362; *Orion Tech.*, 704 F.3d at 1349.

HII attempts to circumvent these roadblocks by arguing that it "is another responsible source and can satisfy agency requirements, which would have been clear to the Army had it conducted adequate market research." *Hydraulics Int'l*, 176 Fed. Cl. at 196. The Court agrees that the Army's market research was anemic. The two most relevant market research components of the Administrative Record which reflect the Army's efforts are the Justification and Approval for Other than Full and Open Competition document ("J&A"), (AR 15491–15503), and the AGPU 1.1 Market Research/Commerciality Determination ("Market Research Document"), (AR 15477–15481). Both reflect a dearth of meaningful detail, reliance on outdated information, and language referring to the congressionally prohibited OTA authority as the basis for selecting Sun Test as the sole source recipient. This is deeply troubling.

While the extent of market research may vary depending on the particulars of the procurement, it is subject to limitations. *See* FAR 10.002. Here, the Army commingled timely market research with information gleaned far outside the 18-month limit provided by FAR 10.002(b)(1). For example, the market research section of the J&A document almost exclusively references the January 2021 OTA procurement rather than the sole source at issue in HII's protest. (*See* AR 15498 ("Analysis of market research revealed the most advantageous course of action was to seek competition during prototyping via the AMTC OTA.")).[2] The Market Research Document also does little, if anything, to support the Army's decision. Although HII was listed as a "potential source[,]" (AR 15479), the document—and counsel's assertion about its contents—is vague, (OA Tr., 32:2–41:25). Additionally, the Army selected Sun Test as the sole source recipient prior to conducting its market research.[3] (*See* AR 15497). What information

---

[2] The Army's desire to use its former Other Transaction Authority ("OTA") was the subject of HII's prior bid protest before Judge Holte. *See Hydraulics Int'l, Inc. v. United States*, 161 Fed. Cl. 167 (2022). OTAs permit some agencies to pursue prototype projects relating to "enhancing the mission effectiveness of military personnel" and supporting elements. *Id.* at 176. In 2024, Congress substantially altered the authority for OTAs, by requiring agency certification that a proposed OTA is "essential to meet critical national security objectives." 10 USC § 4022(a)(2)(C)(II); (Administrative Record ("AR") at 15598–99, ECF No. 39). That certification was never made, dooming the Army's initial long and costly effort. The Army then turned to a sole source award at issue here. (Def.'s Cross-MJAR at 19 (citing AR 15480), ECF No. 61)).

[3] The United States cannot explain why, if Sun Test had already been selected as the sole source recipient, it was necessary for the Army to contact "Mark Krusemark, Vice President, Sun Test Systems Inc." and review Sun Test's website on March 12, 2024, as part of the market research. (AR 15478; *see* Oral Argument Transcript ("OA Tr."), 78:13–80:17, ECF No. 83). The Army did not contact HII. (*See* OA Tr., 91:24–92:1). In defending its market research, the United States also directs the Court to *Harmonia Holdings Group, LLC v. United States*, which similarly presented a challenge to the sufficiency of the agency's market research. (Def.'s Cross-MJAR at 28 (citing 145 Fed. Cl. 583, 595 (2019))). The United States' comparison is inapt. In *Harmonia*,

the Army did provide is remarkable for its paucity—no facts are provided regarding what literature was reviewed, what conversations with government officials revealed, or what literature was reviewed.[4]

The Army's lack of meaningful market research is a clear violation of FAR Part 10. However, there is simply no circumventing standing—HII was not capable of producing a compliant AGPU 1.1 when required and therefore cannot demonstrate the requisite economic interest. Lest this decision be construed in any manner as approval of the Army's actions, it is most certainly not. The possibility that no one could challenge a particular action does not confer standing. Courts have held that the absence of other potential litigants cannot serve as a basis for standing. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974) ("[t]he assumption that if [plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing.").

As explained below, were the Court to reach the merits of this pre-award protest, the Court would be inclined to determine that the Army's compliance with FAR Part 10 was insufficient, and perhaps pretextual. The outcome reached here rests only upon HII's lack of standing. To justify its standing, HII filed multiple declarations from its CEO alleging that HII could meet the simultaneous and continuous functionalities if given more time. (Seifollahi Decl. ¶ 15 (Feb. 20, 2025), ECF No. 1-3 ("Moreover, HII could also meet that same supposed requirement [of simultaneous and continuous operation of three functionalities] with modifications to its product"); Seifollahi Decl. ¶ 3 (Mar. 6, 2025), ECF No. 28-2 ("Our HII engineering staff have reviewed the PID 3.7 requirements for simultaneous and continuous operations and HII now anticipates that these modifications to the MACHTU system will take six (6) months to complete."); Seifollahi Decl. ¶ 8 (Apr. 1, 2025), ECF No. 47-1 ("HII on March 4, 2025 began to self-fund the modifications to the MACHTU system to comply with PID 3.7. These modifications will take 5 more months from today to complete.")); *see also Hydraulics Int'l*, 176 Fed. Cl. at 197 (citing portions of Mr. Seifollahi's declarations). These declarations confirm that HII did not have a compliant AGPU 1.1 in time to be considered for this award.

Finally, to the extent that HII continues to contend that Sun Test has not shown that its AGPU 1.1 units can function simultaneously and continuously—therefore excusing HII from meeting that requirement as well—the Court summarily dismisses that argument. (*See* Pl.'s MJAR at 28; Pl.'s Reply at 7–10 ("[N]either the Government nor STS can refute that the STS AGPU 1.1 with 60-foot cables, lines, and hoses, *was never tested for PID 3.7 simultaneous*

---

the agency engaged directly with the plaintiff, an important distinction not presented here. *Harmonia*, 145 Fed. Cl. at 596 (after soliciting comments and capability statements, the agency engaged with Harmonia by email and "supplying Harmonia with additional information . . . .").

[4] The paltry information provided by the Agency within 18 months of the acquisition decision does not adequately reflect the "results" of the research when it omits any description of what was learned in interviews, from websites, or in the literature review. *See* FAR 10.002(e) ("The head of the agency shall document the results of market research in a manner appropriate to the size and complexity of the acquisition.").

*operation.*") (emphasis in original), ECF No. 65). The Army tested Sun Test's unit and found it to be capable of simultaneous and continuous operations. (*See* OA Tr., 42:20–43:2 ("It is specifically [the] simultaneous operations test and it demonstrates the final finding is that the STS AGPU 1.1 was capable of providing independent and simultaneous [electronic, hydraulic, and pneumatic operation].") (citing AR 14229–14321)). It is not the Court's place to second guess those findings. *Info. Sciences Corp. v. United States*, 73 Fed. Cl. 70, 104 (2006); *see also Mortgage Contracting Servs. LLC v. United States*, 153 Fed. Cl. 89, 126 (2021) ("The court must especially defer to the agency's technical evaluations, past performance ratings, and other 'minutiae of the procurement process . . . which involve discretionary determinations of procurement officials.'" (quoting *J.C.N. Constr., Inc. v. United States*, 107 Fed. Cl. 503, 510 (2012) (citation omitted))). Rather than engaging with this Court's standard of review, HII casts aspersions attempting to deflect attention away from its own inability to produce a compliant unit.

HII simply cannot surmount the insurmountable—it could not produce a compliant AGPU 1.1 and therefore could not reasonably have been considered for this award. HII therefore is not an actual or prospective bidder and has no direct economic interest. *See Rex. Serv.*, 448 F.3d at 1307. HII has not demonstrated to the Court that it would have had *any* chance of securing the contract, let alone a "substantial" one despite the Agency's deeply flawed market research. *See Info. Tech.*, 316 F.3d at 1319; *Orion Tech.*, 704 F.3d at 1349. For these reasons, the United States' Motion to Dismiss, (ECF No. 61), is **GRANTED** and HII's claim is **DISMISSED** for lack of subject-matter jurisdiction. RCFC 12(b)(1). Accordingly, HII's Motion for Judgment on the Administrative Record, (ECF No. 47), and Sun Test's Cross-Motion for Judgment on the Administrative Record, (ECF No. 60), are **DENIED** as **MOOT**. The Clerk is **DIRECTED** to enter judgment accordingly. The parties shall meet and confer and file a Joint Status Report proposing redactions to this Memorandum Opinion **fourteen (14) days** after the end of the federal government shutdown to allow the Court to file a public version of the Opinion.

**IT IS SO ORDERED.**

s/   David A. Tapp

DAVID A. TAPP, Judge